IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| THEODORE H. BUTZ, *et al.*, | * | |
| Plaintiffs, | * | Case No. PX 16-1508 |
| v. | * | |
| | * | |
| PULTE HOME CORPORATION, | * | |
| Defendant. | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending in this declaratory relief action is a motion to dismiss filed by Defendant, Pulte

Home Corporation ("Pulte" or "Defendant"). ECF No. 20. The issues are fully briefed, and the

Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following

reasons, Defendant Pulte's motion to dismiss is denied.

**I. BACKGROUND**[1]

Plaintiffs Theodore Butz, Thompson Butz, Jr., Robert Butz, and Jeremy Butz are brothers

(collectively, "Plaintiffs") who together owned a 54.45-acre property located at 21901 Ridge

Road, Germantown, Montgomery County, Maryland ("the Property"). ECF No. 2 at 2. Because

the Property was used for agricultural purposes, Plaintiffs enjoyed favorable tax treatment under

Md. Code Ann., Tax-Prop. § 8-209. *See generally* ECF No. 2 at 4. Defendant Pulte, a Michigan

corporation, is a national homebuilder with numerous projects in the state of Maryland. ECF No.

2 at 2.

---

[1] These facts derive largely from Plaintiffs' Complaint and are accepted as true for purposes of assessing
the sufficiency of its claim against Pulte at the motion to dismiss stage.

On August 14, 2013, the parties executed a Letter of Intent for Pulte to purchase the Property for development of 140 single-family residential homes. ECF No. 2 at 2; ECF No. 2-2. On November 27, 2013, Pulte and the Plaintiffs executed an agreement ("the Agreement"), ECF No. 2-3, for the purchase of the Property. ECF No. 2 at 3. The recordation of deed to the Property triggered three tax assessments: (1) an agricultural land transfer tax ("the Agricultural Land Transfer Tax") pursuant to Md. Code Ann., Tax-Prop. § 13-301, *et seq.*; (2) a Prince George's County transfer tax, pursuant to Prince George's County Code § 10–188; (3) and a general state transfer tax applicable to all real estate transactions, Md. Code Ann., Tax-Prop. §§ 13–202 to 13–203. ECF No. 2 at 5. Because Pulte purchased the Property for the purpose of building homes, ECF No. 2 at 2, the Property's favorable tax treatment under Md. Code Ann., Tax-Prop. § 8-209 ended. ECF No. 2 at 4; ECF No. 2-5. This transformation from agricultural to non-agricultural use resulted in an Agricultural Land Transfer Tax in the amount of $959,857. ECF No. 2 at 4; ECF No. 2-5.

The Agricultural Land Transfer Tax assessment precipitated a dispute between the parties as to which party should bear the cost under the Agreement. ECF No. 2 at 6. Plaintiffs contend that Pulte is in material breach of Section 15.4 of the Agreement by not sharing equally in the payment of the Agricultural Land Transfer Tax. Section 15.4 of the Agreement provides:

> Shared Settlement Costs. Seller [Plaintiffs] and Purchaser [Pulte] shall share equally the Settlement Agent Fees and all state, county and other transfer taxes, recordation fees and other fees in connection with the Settlement [to complete the purchase and sale].

ECF No. 2-3 at 12.

On April 18, 2016, Plaintiffs filed a complaint in the Circuit Court for Montgomery County Maryland seeking a declaratory judgment that Pulte pay its $479,928 share of the

Agricultural Land Transfer Tax. ECF No. 2 at 6. Following timely removal of the case to this Court, Pulte filed its motion to dismiss. ECF No. 20.

## II.     STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def., v. Trimble Navigation Ltd.*, 484 F. 3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). The Court also "may properly take judicial notice of matters of public record." *Philips v. Pitt County Mem's Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009). Here, the August 14, 2013 letter of intent to purchase the Property, the executed Agreement, subsequent amendments to the Agreement, the Agricultural Land Transfer Tax statement, and deed of conveyance are integral exhibits attached to the Complaint, whose authenticity is not disputed. *See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6, 2-7.

"Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim. However, the complaint must allege sufficient facts to establish those

elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to

demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the

plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S.

at 570).

## III.    ANALYSIS

Pulte contends the current action should be dismissed on three grounds: (1) Plaintiffs

impermissibly seek declaratory relief; (2) Plaintiffs failed to allege compliance with statutory and

contractual notice obligations regarding the Agricultural Land Transfer Tax; and (3) Plaintiffs

are obligated to pay the Agricultural Land Transfer Tax pursuant to the terms of the parties'

Agreement. ECF No. 20-1 at 2. The Court will address each argument in turn.

### A.    Declaratory Judgment

The Plaintiffs' sole cause of action is for declaratory relief pursuant to §§ 3-401 through

3-415 of the Courts & Judicial Proceedings Article of the Maryland Code. ECF No. 2 at 6. Pulte

argues the Plaintiffs impermissibly seek declaratory judgment instead of pursuing a common law

breach of contract claim. The Court is not persuaded.

Maryland's Declaratory Judgement Act provides:

> Any person interested under a deed, will, trust, land patent, written
> contract, or other writing constituting a contract, or whose rights,
> status, or other legal relations are affected by a statute, municipal
> ordinance, administrative rule or regulation, contract, or franchise,
> may have determined any question of construction or validity
> arising under the instrument, statute, ordinance, administrative rule
> or regulation, land patent, contract, or franchise and obtain a
> declaration of rights, status, or other legal relations under it.

Md. Code Ann., Cts. & Jud. Proc. § 3-406. The Court retains broad discretion in determining whether to issue a declaratory judgment. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 406 (1975). But dismissal of a declaratory judgment action without declaring the rights of the parties is rarely appropriate. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 556 (1999); *accord Christ by Christ v. Maryland Dep't of Nat. Res.*, 335 Md. 427, 435 (1994) (citing cases).

At the motion to dismiss stage, "the test of the sufficiency of the complaint for declaratory judgment is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all." *Allied Inv.*, 354 Md. at 556 (quoting *Shapiro v. Board of County Comm'rs*, 219 Md. 298, 302–03 (1959)) (alterations omitted). So "even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree." *Id.*

It is proper to dismiss a declaratory judgment action only where there is a lack of jurisdiction or where a declaratory judgment is not an available or appropriate type of remedy. *Christ by Christ*, 335 Md. at 435. In considering whether declaratory judgment is an appropriate remedy, the Court must consider whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004) (internal citation and quotation marks omitted); *accord Hamilton v. McAuliffe*, 277 Md. 336, 339 (1976).

Pulte relies on *Davis v. State*, 183 Md. 385 (1944) and *Porcelain Enamel & Mfg. Co. of Balitmore v. Jeffrey*, 177 Md. 677 (1940)—each of which pre-date the 1945 amendment to the

Uniform Declaratory Judgment Act—in arguing that Plaintiffs cannot bring a declaratory action

in lieu of a breach of contract claim. But under the post-1945 "Concurrent Remedies" section,

Maryland's Declaratory Judgement Act provides that:

> A party may obtain a declaratory judgment or decree
> notwithstanding a concurrent common-law, equitable, or
> extraordinary legal remedy, whether or not recognized or regulated
> by statute.

Md. Code, Cts. & Jud. Procs. § 3-409(c).

Importantly, the purpose of this provision is to offer concurrent, not exclusive, remedies

under the Uniform Declaratory Judgments Act. *Schultz v. Kaplan,* 189 Md. 402, 407 (1947)

(quoted extensively in *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 557 n.2 (1999)). Plaintiffs'

possible breach of contract claim, therefore, does not defeat their right to seek and obtain a

declaratory judgment. *See Allied Inv.*, 354 Md. at 556 (citing Md. Code Ann., Cts. & Jud. Proc. §

3-409(c)) ("A party may obtain a declaratory judgment or decree notwithstanding a concurrent

common-law, equitable, or extraordinary legal remedy . . . ."); *Post v. Bregman*, 349 Md. 142,

160 (1998) ("The existence of another remedy, at law or in equity, does not ordinarily defeat a

party's right to seek and obtain a declaratory judgment.") (citing *Turner v. Manufacturers' Cas.

Ins. Co.*, 206 Md. 601 (1955); *Glorius v. Watkins*, 203 Md. 546 (1954)); *Gloyd v. Talbott*, 221

Md. 179, 183 (1959) ("The existence of a remedy at law or in equity is not a bar to declaratory

relief."); *accord Polakoff v. Hampton*, 148 Md. App. 13, 26 n.4 (2002) ("[T]he General

Assembly amended the Uniform Declaratory Judgments Act . . . to declare that the real intention

of the Act was that the existence of another adequate remedy at law or equity should not

preclude a judgment for declaratory relief." (internal quotation marks omitted)).

Furthermore, Plaintiffs' requested declaration that Pulte "is required pursuant to the terms

of the Agreement to pay Plaintiffs the sum equal to one-half the Agricultural Transfer Tax,

which is $479,928.00 . . . .” is precisely the kind that is contemplated under the Act. ECF No. 2 at 7. Judgment as to which party must pay the tax “will serve a useful purpose in clarifying and settling the legal relations in issue” so that this land deal can conclude. *Penn–Amencan Ins. Co. v. Coffey,* 368 F.3d 409, 412 (4th Cir. 2004); *Allied Inv.*, 354 Md. at 559 (finding declaratory judgment appropriate where petitioners’ legal relations were affected by a contract). Accordingly, because Plaintiffs’ declaratory action is proper, the Court denies Pulte’s motion to dismiss on this ground.

**B.      Compliance with Statutory and Contractual Notice Obligations**

Next, Pulte asserts that Plaintiffs failed to allege compliance with statutory and contractual notice obligations regarding the Agricultural Land Transfer Tax, and this failure warrants dismissal.

**1.   Statutory notice**

First with regard to statutory notice, Section 13-308(a) of the Agricultural Land Transfer Tax provides that “[w]hen a contract is executed for the transfer of any interest in agricultural land, the seller shall notify the buyer . . . that the land may be subject to the agricultural land and transfer tax.” Md. Code Ann., Tax-Prop. § 13-308. The rationale behind not only the tax itself but notice to pay the tax is to “inhibit property owners from transferring agricultural land to nonagricultural uses.” *Rouse-Fairwood Dev. Ltd. P’ship v. Supervisor of Assessments for Prince George’s Cty.*, 138 Md. App. 589, 612 (2001) (quoting *DMH Joint Venture v. Hahner*, 80 Md. App. 257, 266 (1989)) (quotation marks omitted). The statute “serves a dual role—first as a deterrent to conversion of the land and second as a penalty when the land is sold for development.” *Rouse-Fairwood*, 138 Md. App. at 612 (quoting State Department of Assessments and Taxation, Real Property, *The Agricultural Transfer Tax*, at http://

www.dat.state.md.us/sdatweb/agtransf.html (Feb. 15, 2000)) (quotation marks omitted); *accord DMH Joint Venture*, 80 Md. App. at 266 ("The tax supports this preservation motive in two ways: it generates revenues to enable the State to purchase agricultural land preservation easements . . . ; and, secondly, the tax inhibits property owners from transferring agricultural land to non-agricultural uses . . . ." (citations omitted)).  To effectuate this purpose, the tax is assessed on the instrument that conveys title to the property and must be paid in order to record the deed. *Id.*

Section 13–308 does not prescribe a form for the notice of the tax; thus the question becomes "whether the notice given constitutes substantial compliance [with the statute]." *DMH Joint Venture*, 80 Md. App. at 268 (quoting *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 267 (1960)) (citations omitted). "Written notice" in some form "must be given." *Id.* at 267.

Pulte contends the Agreement is ambiguous and thus inadequate to provide written notice under Section 13–308. ECF No. 24 at 4. Pulte further argues that if the terms are ambiguous, Plaintiffs are not entitled to discovery of extrinsic evidence. *Id.* Pulte's arguments are unavailing.

At the outset, it bears noting that generally "the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 978 F.2d 140, 143 (4th Cir. 1992). Thus, if Pulte is correct, this Court would be hard pressed to dismiss Plaintiffs claims at this stage. The Court, however, must first determine whether a contract provision is ambiguous. *See Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007); *see also Calomiris v. Woods,* 727 A.2d 358, 362 (Md. 1999) (noting that "the question of whether a contract is ambiguous ordinarily is determined by the court as a question of law").

In Maryland, where contract language is unambiguous, courts "give effect to its plain, ordinary, and usual meaning," taking into consideration the context in which the language is used. *Id.* By contrast, a contract is ambiguous if, " 'when read by a reasonably prudent person, it is susceptible of more than one meaning.' " *Diamond Point Plaza*, 400 Md. at 751 (quoting *United Servs. v. Riley*, 393 Md. 55, 80 (2006)). Courts may consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution" in making such a determination. *Calomiris*, 727 A.2d at 363 (quoting *Pac. Indem. v. Interstate Fire & Cas.*, 488 A.2d 486, 488 (Md. 1985)).

With regard to the notice clause in the instant contract, the Maryland Court of Special Appeals has interpreted a similar provision in *DMH Joint Venture v. Hahner*, 80 Md. App. 257 (1989). There, the Court of Special Appeals measured the statutory sufficiency of a provision which read: "[t]ransfer taxes shall be split equally between Seller and Purchaser." *Id.* at 261. The *DMH Joint Venture* court held that because the subject property triggered three separate transfer taxes (a general state transfer tax, a county transfer tax, and the Agricultural Land Transfer Tax), the contractual "language [was] ambiguous and subject to interpretation with the aid of the extrinsic evidence." *Id.* at 269.  The Court then considered "the sophistication of the parties, the length of their negotiation, and the detail of their final Agreement" as extrinsic evidence supporting the determination that the parties "were aware [the land] was potentially subject to the imposition of the Agricultural Land Transfer Tax." *Id.* at 270. The Court ultimately determined the phrase "transfer taxes" legally sufficient to satisfy the notice requirements of Section 13–308.

Similar to the real estate in *DMH Joint Venture*, the conveyance of the Property from the Plaintiffs to Pulte was subject to three types of transfer taxes—the general state transfer tax, a county transfer tax, and the Agricultural Land Transfer Tax. According to Section 15.4 of the

Agreement, the Parties agreed to split equally "all state, county and other transfer taxes . . . ." ECF No. 2-3 at 12. Construing the facts and inferences in the light most favorable to Plaintiffs, the Complaint sufficiently alleges that written notice of the Agricultural Land Transfer Tax was provided through Section 15.4 of the Agreement, equally allocating payment of "state, county and other transfer taxes." ECF No. 2 at 3.

Moreover, even if the Court were to regard this provision as ambiguous, the Court must consider extrinsic evidence of their meaning, akin to the examination in *DMH Joint Venture*, to shed light on what the parties intended regarding the provision. *See DMH Joint Venture*, 80 Md. App. 257 at 270 (finding evidence of actual or implied knowledge of the Agricultural Land Transfer Tax relevant to its statutory notice analysis where the transfer tax provision was ambiguous); *Key Tidewater Ventures LLC v. PNC Bank, N.A.*, No. CIV. JKB-14-2170, 2014 WL 5306716, at *5 (D. Md. Oct. 15, 2014) ("[T]he contract is not so clear and unambiguous such that the Court can dismiss Plaintiffs' claims as a matter of law at this early stage of litigation").

Consideration of extrinsic evidence to interpret a contractual provision is inappropriate on a motion to dismiss for failure to state a claim. *See Lomas v. Red Storm Entm't, Inc.*, 49 F. App'x 396, 402 (4th Cir. 2002) (where there is ambiguity in a contract the "parties should be accorded an opportunity to conduct any relevant discovery, and they should be permitted to present to the court any materials pertinent to the issue"); *Beacon Wireless Solutions, Inc. v. Garmin Int'l, Inc.,* No. 5:11–CV–00025, 2011 WL 4737404, at *11 (W.D.Va. Oct. 5, 2011) (interpretation of contract on ambiguous issue "constitutes a question of fact that is inappropriate for resolution on this Rule 12(b)(6) motion to dismiss"); *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 527 (E.D. Va. 2009) (denying motion to dismiss because "both parties have advanced reasonable interpretations of the ambiguous contract provisions, [and]

extrinsic evidence not presently before the Court is necessary to resolve the ambiguity"); *accord Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 635 (D. Md. 2012), *aff'd sub nom. Adam v. Wells Fargo Bank*, 521 F. App'x 177 (4th Cir. 2013) ("When a trial court finds that a contract is ambiguous, 'the meaning of the contract is a question to be determined by the trier of fact.'" (quoting *Univ. of Baltimore v. Iz*, 123 Md. App. 135, 162 (1998))). A fact-intensive inquiry cannot and should not be undertaken at the motion to dismiss stage. Rather, Plaintiffs' Complaint adequately alleges that they have provided statutorily sufficient written notice under § 13-308, and so Pulte's motion to dismiss on this ground is denied.

### 2.  Contractually required notice

Pulte also argues that the Complaint fails to allege that the Plaintiffs provided contractually-required notice pursuant to Section 7.2 of the Agreement. Section 7.2 of the Agreement states:

> Within five days following the commencement of the Feasibility Period, Seller shall deliver to Purchaser all documents, statements, plans, reports, permits, trust documents pursuant to which Seller holds the Property, and other materials in the Seller's possession regarding the Property, including but not limited to . . . . real estate tax information.

ECF No. 2-3 at 4.

Pulte's contention, however, amounts to an affirmative defense that cannot be reached on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

The United States Court of Appeals for the Fourth Circuit has made clear that an affirmative defense is one that raises " 'new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.' " *Emergency One. Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir. 2003) (quoting Black's Law Dictionary 430

(7th ed. 1999))); *accord* Wright and Miller, 5 Fed. Prac. & Proc. Civ. § 1271 (3d ed.)

(affirmative defenses not listed in Rule 8(c) include "allegations outside of the plaintiff's prima

facie case that the defendant therefore cannot raise by a simple denial in the answer").

Affirmative defenses, therefore, generally "share the common characteristic of a bar to the right

of recovery even if the general complaint were more or less admitted to." *Id.* (quoting *Wolf v.

Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995)) (alterations omitted).

       Pulte's argument regarding "contractually required notice" is more properly characterized

as an affirmative defense of material breach of contract as a result of Plaintiffs' non-disclosure.

*See Wilkens Square, LLLP v. W.C. Pinkard & Co.*, 189 Md. App. 256, 277 (2009), *aff'd*, 419

Md. 173 (2011) (characterizing the "failure to disclose a material fact" as an affirmative

defense); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 879 (D. Md.

2015) (analyzing whether the "failure to notify" under a section of an agreement was either a

material breach discharging the non-breaching party of its duty to perform or an entitlement to

the equitable defense of unclean hands). Pulte, in its motion, raises new facts and arguments that,

if true, could defeat Plaintiffs' claim. *Emergency One. Inc. v. Am. Fire Eagle Engine Co.,* 332

F.3d 264, 271 (4th Cir. 2003) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir.

2003)). Pulte specifically asserts that Plaintiffs "never complied with" the disclosure terms of

Section 7.2 of the Agreement. ECF No. 20-1 at 8.

       A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) ordinarily "cannot reach the

merits of an affirmative defense." *Maryland Restorative Justice Initiative v. Hogan*, No. CV

ELH-16-1021, 2017 WL 467731, at *16 (D. Md. Feb. 3, 2017) (quoting *Goodman v. Praxair,

Inc.,* 494 F.3d 458, 464 (4th Cir. 2007)). Only "in the relatively rare circumstances where . . . all

facts necessary to the affirmative defense 'clearly appear[ ] on the *face of the complaint*' " can an

affirmative defense be resolved at the dismissal stage. *Goodman*, 494 F.3d at 464 (quoting

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993))

(emphasis in *Goodman*). This rare circumstance is not present here.

Pulte cleverly argues that Plaintiffs' *failure* to allege facts sufficient to *defeat* Pulte's

claims of non-disclosure actually supports dismissal. ECF No. 20-1 at 18. But Plaintiffs are not

obligated to presage and rebut potential affirmative defenses on the face of the Complaint.

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) ("Except, perhaps, in the unusual

case where a claim is filed clearly beyond the applicable limitations period[,]" a plaintiff is not

required "to plead affirmatively in his complaint matters that might be responsive to affirmative

defenses even before the affirmative defenses are raised.") (emphasis omitted).To hold otherwise

would place an unfair and onerous burden on Plaintiffs inconsistent with bedrock principles of

pleading causes of action. Accordingly, Pulte's argument here is more properly considered on a

motion for summary judgment. *See Forst*, 4 F.3d at 250.

## C. Agreement Requires that Plaintiffs Pay the Tax

Finally, Pulte argues the Section15.1(1) of the Agreement requires Plaintiffs to pay the

Agricultural Land Transfer Tax. Section15.1(1) of the Agreement states:

> Notwithstanding the aforesaid, Seller [Plaintiffs] shall be solely
> responsible for payment of any land use, roll back, or similar tax
> applicable to the Property; which taxes Seller [Plaintiffs] shall pay
> at Settlement.

Pulte's reading of Section15.1(1) as being inclusive of the Agricultural Land Transfer

Tax violates a cardinal principle of contract construction: that a document should be read to give

effect to all its provisions and to render them consistent with each other. *See Mastrobuono v.*

*Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (citing Restatement (Second) of

Contracts § 203(a)); *Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004) (citing *Jones v.*

*Hubbard*, 356 Md. 513, 534–35 (1999)) (Contracts are to be construed "as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect."). The Agreement specifically references equal division of transfer taxes between Pulte and Plaintiffs. In Section 15.4 of the Agreement, the parties agreed to split equally "all state, county and other ***transfer taxes*** . . . ." ECF No. 2-3 at 12 (emphasis added).  Reading into Section 15.1 a second reference to transfer taxes, as Pulte suggests, would be indefensibly duplicative and create a tension between the two provisions that does not otherwise exist. Put differently, the only reading which gives each provision full effect must construe "land use, roll back, or similar tax" as not including a "transfer tax" which is instead covered by Section 15.4. *DMH Joint Venture*, 80 Md. App. At 261 (referencing the statutory scheme as an "agricultural land *transfer tax*") (emphasis added); *Montgomery Cty. v. Phillips*, 445 Md. 55, 63 (2015) (distinguishing between the state and county "agricultural land transfer tax"); *accord Pulte Land of Maryland Corp. V. Dep't of Fin. for Montgomery Cty.*, No. 70, 1976 WL 1416, at *2 (Md. Tax Mar. 31, 1976) (the recoupment of "the county *transfer* tax is not a tax on property, but is a tax imposed upon the act of transferring an interest in real property").

Moreover, it is "possible to read the relevant statutory and contractual provisions together, both harmoniously and consistently with their plain meaning." *Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004). Simply stated, the specific taxes described in Section 15.1 do not encompass a transfer tax. A "land use tax" under the appropriate Maryland code, for example, is a "tax assessment based on agricultural or farm use, rather than actual market value." *Rouse-Fairwood*, 138 Md. App. at 595. A land use tax provides preferential treatment afforded to the Property during the time it is used as farmland. The Agricultural Land Transfer tax, by

14

contrast, is not assessed based on an ongoing use of the property as farmland, but by transfer of the property's title at the point it will no longer be used as farmland.

Likewise, a "rollback tax" by law is a specific type of assessment calculated by a retrospective assessment of the difference in a property's market value over time. *See, e.g.*, Maryland State Department of Assessments and Taxation, Maryland Assessment Procedure Manual, Real Property Chapter, 019.70.20 (revised July 28, 2016), *available at* http://dat.maryland.gov/Pages/ProcedureDetails.aspx?AspXPage=g%5F2D618D9BFA134A4D8 514F0C99765B324:%2540ID%3D201 (last visited February 21, 2017) ("The rollback tax is calculated as follows. First, the market value of the property must be established for the tax year in which the violation occurs. From this market value, the Supervisor will subtract the value in effect at the beginning of the original [Department of Natural Resources] agreement. The difference will be subject to a rollback tax bill that is calculated for the entire period of the agreement, with the value difference being phased-in incrementally. . . . "); *Read v. Supervisor of Assessments of Anne Arundel Cty.*, 354 Md. 383, 390 (1999) (describing the rollback tax as a recoupment from "withdrawals of property from the FCMA for the purpose of a conveyance to a new owner"). The "rollback tax" bears little to no resemblance to the flat percentage fee calculation used for the Agricultural Land Transfer Tax imposed upon transfer of title. *See* Md. Code Ann., Tax Prop., § 13-303 (calculation of the transfer tax); *Pulte Land of Maryland Corp. V. Dep't of Fin. for Montgomery Cty.*, No. 70, 1976 WL 1416, at *2 (Md. Tax Mar. 31, 1976) (distinguishing between the assessment of a county "land transfer tax" on the transfer and the state "rollback tax" not assessed on the property). Pulte's attempt to construe the Agricultural Land Transfer Tax as a tax described in section 15.1 of the Agreement is therefore untenable. Pulte's motion to dismiss on this ground is also denied.

## IV.   CONCLUSION

For the reasons stated above, Pulte's motion to dismiss is denied. A separate order will

follow.


2/21/2017                                                        /S/
Date                                      Paula Xinis
                                          United States District Judge