IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THEODORE H. BUTZ, THOMPSON H. BUTZ, JR., ROBERT T. BUTZ and JEREMY F. BUTZ | * * * * * | |
| v. | * | Civil No. PX-16-1508 |
| | * * | |
| PULTE HOME CORPORATION | * * | |

********

**MEMORANDUM OPINION**

Plaintiffs Theodore H. Butz, Thompson H. Butz, Jr., Robert F. Butz, and Jeremy F. Butz (collectively, the "Butz Family" or "Plaintiffs") bring this lawsuit against defendant Pulte Home Corporation ("Pulte") seeking declaratory relief for a contract claim. Now pending are two cross-motions for summary judgment filed by Plaintiffs and Pulte respectively. ECF Nos. 57, 58. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, Plaintiffs' motion for summary judgment is granted, and Pulte's motion for summary judgment is denied.

**I. Background**

Plaintiffs are brothers who owned undivided quarter interests in a 54.35 acre property located in Montgomery County, Maryland ("the Property"). ECF No. 58-2. Because Plaintiffs used the Property for agricultural purposes, the Property enjoyed preferential tax treatment, and transfer of the Property for purposes other than agricultural could subject the transfer to the Agricultural Land Transfer Tax pursuant to MD. CODE ANN., TAX-PROP. § 13-301, *et. seq*. ECF No. 2 at ¶¶ 1, 7, 15. In 2015, after years of discussion, Plaintiffs sold the Property to Pulte for the purpose of building an active adult community. This transfer triggered the assessment of the

1

Agricultural Land Transfer Tax by the Maryland Department of Assessments and Taxation ("SDAT"). *Id.* At issue in this case is Pulte's failure to pay an equal share of this tax.

The Butz family, through Thompson H. Butz, Jr ("Tom Butz"), began sale discussions with Pulte in September 2008. ECF No. 57-2. Tom Butz marketed the Property to Pulte as a "unique opportunity" and informed Pulte that Plaintiffs were "farmer[s] and own[ed] the site outright." *Id.* Five years later, in August 2013, Matthew Bunch ("Bunch"), a Director of Land Acquisition at Pulte, emailed Tom Butz a Letter of Intent concerning the Property.[1] ECF No. 57-3. In the email, Bunch referenced Pulte's sophistication as a real estate developer, stating "We've had enormous success building active adult communities across the Mid-Atlantic region." *Id.* The parties exchanged drafts of the Letter of Intent, but none of the changes addressed taxation. ECF No. 58-8. One significant change was the extension of the closing period from 15 months to 18 months because Pulte indicated 15 months would not be a "reasonable amount of time given [Montgomery County's] unpredictability." ECF No. 57-4. The Letter of Intent was executed by the parties in September 2013. ECF No. 58-9.

On October 3, 2013, Bunch sent Tom Butz a draft Purchase and Sale Agreement ("PSA") using Pulte's standard form contract. ECF No. 58-10. The parties exchanged edits of the PSA, but did not discuss, as part of negotiations, the Agricultural Land Transfer Tax. ECF No. 58-11. In November 2013, the parties executed the PSA. ECF Nos. 58-13, 58-5.

When the deed was recorded, three types of taxes were assessed: (1) the Agricultural Land Transfer Tax pursuant to MD. CODE ANN., TAX-PROP. § 13-301, *et. seq.*; (2) a county transfer tax; and (3) a general state transfer tax applicable to all real estate transactions pursuant to MD. CODE ANN., TAX-PROP. §§ 13-202 to 13-203. ECF No. 2 at ¶ 19. The crux of this

---

[1] Pulte notes that it experienced "significant turnover" within the corporation due to the global recession between 2008 and 2013. ECF No. 58-7.

dispute is whether the PSA obligates the parties to share the cost of the Agricultural Land Transfer Tax, which was assessed on the Property because Pulte purchased the Property for the purpose of building homes. *Id.* at ¶ 7, 14-15.

The parties did not discuss the Agricultural Land Transfer Tax until the parties' escrow agent created the HUD-1 statement. The first version of the HUD-1 statement allocated full responsibility for this tax to Plaintiffs as the sellers. ECF No. 57-24 at 3. Plaintiffs' attorney instructed the escrow agent to amend the HUD-1 statement and split responsibility for this tax between the parties. ECF No. 57-25 at 2-4. The escrow agent did so, and the revised HUD-1 Statement split the tax between Plaintiffs and Pulte. ECF No. 58-20. At that point, the parties began exchanging emails discussing the Agricultural Land Transfer Tax. *See, e.g.*, ECF No. 58-22. Pulte in some emails claimed to be "shocked that they were asked to pay any of this Tax," because Pulte, "had no notice of this and fully expected that any tax similar to a [d]eferral of taxes based on a land use would be [Plaintiffs'] obligation." *Id.* at 2. Pulte, however, knew the Property was used as a farm before engaging in negotiations to buy it, spent over four months conducting due diligence on the Property, and had previously engaged in thousands of transactions to purchase properties in Maryland, several of which included assessment of the Agricultural Land Transfer Tax. ECF No. 57-18; ECF No. 57-5 at ¶¶ 7-10; ECF No. 57-6; ECF No. 57-7; ECF No. 57-8; ECF No. 57-9; ECF No. 57-10.

Pulte ultimately refused to pay an equal share of the tax, contending it was not responsible for any portion of this tax under the PSA.[2] Plaintiffs, however, contend that Pulte is

---

[2] Pulte first attempted to avoid paying the Agricultural Land Transfer Tax by characterizing it as a roll back tax or a land use tax. Section 15.1 of the PSA allocates full responsibility for roll back and land use taxes to Plaintiffs as the sellers. ECF No. 58-2. This court, however, rejected Pulte's characterization of this tax as a roll back or land use tax when the court denied Pulte's motion to dismiss. ECF No. 25 at 13-15. Thus, the court will not re-consider this argument here.

3

responsible for an equal share of the tax under § 15.4 of the PSA, entitled "Shared Settlement Costs," which provides, "Seller and Purchaser shall share equally the Settlement Agent Fees and all state, county and *other transfer taxes*, recordation fees and other fees in connection with the Settlement." ECF No. 58-2 (emphasis added). Two other provisions of the PSA are relevant to the parties' dispute. First, § 26 of the PSA, entitled "Montgomery County Disclosures," includes disclosures made "pursuant to applicable law in Montgomery County, Maryland." Section 26 does not include any disclosures related to taxation. *Id.* Second, § 7.2 of the PSA, entitled "Available Plans, Reports, and Permits," provides,

> Within five (5) days following the commencement of the Feasibility Period [which begins when the Agreement was executed], Seller shall deliver to Purchaser all documents, statements, plans, reports, permits, trust documents pursuant to which Seller holds the Property, and other materials in the Seller's possession regarding the property, including, but not limited to, any survey, soils, reports, architectural and engineering drawings, permits, zoning applications and appeals, environmental reports, *real estate tax information*, title reports and policies, etc….

*Id.* (emphasis added). Plaintiffs did not deliver any documents regarding real estate tax information pursuant to this provision. ECF No. 28 at 5.

To proceed with the sale, Plaintiffs agreed to pay the Agricultural Land Transfer Tax in full on the condition that Pulte not raise merger as a defense to a suit against Pulte to recover Pulte's share of the assessment. ECF No. 57-26. Plaintiffs paid the tax, and the deed was executed and recorded.

On April 18, 2016, Plaintiffs filed a complaint in the Circuit Court for Montgomery County seeking a declaratory judgment that (1) Pulte pay its $479,928 share of the Agricultural Land Transfer Tax and (2) Plaintiffs are entitled to reasonable attorneys' fees for prosecution of this claim and suit. ECF No. 2 at 6. Pulte removed the case to this court on May 19, 2016 and moved to dismiss on June 28, 2016. ECF Nos. 1, 20. This court denied Pulte's motion to

4

dismiss.  ECF Nos. 25, 26.  Pulte then filed a motion for reconsideration, which this court also denied.  ECF Nos. 27, 41, 42.  Following discovery, plaintiffs and Pulte filed cross-motions for summary judgment.  ECF Nos. 57, 58.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986).  A genuine issue of material fact exists where, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160-61 (1970).  A court should enter summary judgment when a party fails to make a

showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

### III. Analysis

The sole issue in this dispute is whether Pulte is obligated under the PSA to pay an equal share of the Agricultural Land Transfer Tax. While Plaintiffs claim Pulte is so obligated under § 15.4 of the PSA, Pulte contends it has no obligation for this tax for two reasons. First, Pulte argues Plaintiffs failed to satisfy the statutory notice required by MD. CODE ANN., TAX-PROP. § 13-308. Second, Pulte argues, even if Plaintiffs did satisfy the statutory notice requirement, Plaintiffs failed to satisfy the contractually required notice pursuant to § 7.2 of the PSA. Because this court finds that, viewing the evidence in the light most favorable to Pulte, Plaintiffs satisfied both notice requirements, Plaintiffs' motion for summary judgment is granted and Pulte's motion for summary judgment is denied.

### A. Statutory Notice

The Agricultural Land Transfer Tax is governed by MD. CODE ANN., TAX-PROP. § 13-301 *et. seq.* This statute requires that the seller notify the buyer if the Agricultural Land Transfer Tax may be assessed against the property being transferred, and it penalizes a seller who fails to provide such notice. *Id.* at § 13-308. Specifically, the notice provision states,

> (a) When a contract is executed for the transfer of any interest in agricultural land, the seller shall notify the buyer, in writing, that the transfer may be subject to the agricultural land transfer tax.
> (b) If the seller fails to notify a buyer as required by subsection (a) of this section, the seller is liable to the buyer for the agricultural land transfer tax paid by the buyer.

*Id.* The primary purpose of this requirement is to "preserve the State's agricultural land." *DMH Joint Venture v. Hahner*, 562 A.2d 772, 777 (Md. App. 1989). The statute accomplishes this purpose in two ways: (1) the tax revenue collected from the assessment allows the state to

purchase agricultural land preservation easements, and (2) the tax discourages the transfer of agricultural land for non-agricultural uses. *Id.*

If the notice requirement is not satisfied, the buyer is not obligated to pay any share of the Agricultural Land Transfer Tax. MD. CODE ANN., TAX-PROP. § 13-308. To satisfy the notice requirement, the buyer must receive *written* notice of the potential tax. *DMH Joint Venture*, 562 A.2d at 777. A buyer's actual notice of the tax is not sufficient. *Id.* Where the parties dispute whether the notice requirement was satisfied so as to trigger the buyer's obligation to pay a share of the tax, the question to be determined is "whether the notice given constitutes substantial compliance with the statute." *Id.* at 778. This issue is for the court, not the jury, to decide. *Id.*

The notice requirement can be satisfied by a contract for the sale of land, if the contract provides written notice of the potential tax. *Id.* This determination requires the application of contract interpretation principles. *Id.* Maryland follows the objective approach to contract interpretation. *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010). The first step in interpreting a contract provision is to determine whether the language is ambiguous. *Id.* A contract is ambiguous if, "when viewed from [a] reasonable person['s] perspective, the language is susceptible to more than one meaning;" but a contract is not ambiguous "simply because…the parties offer different meanings to the language." *Id.* at 690-91; *Diamond Point Plaza Ltd. v. Wells Fargo Bank*, 929 A.2d 932, 952 (Md. 2007). In making this determination, courts may consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Diamond Point Plaza Ltd.*, 929 A.2d at 952.

Where a contract is unambiguous, the court construes it according to its plain meaning "without concern for the subjective intent of the parties at the time of formation." *Yanek*, 5 A.3d at 690. In doing so, a court will give effect to each clause of the contract in order to avoid "an

7

interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Diamond Point Plaza Ltd.*, 929 A.2d at 952 (citations and internal quotation marks omitted). By contrast, if a contract is ambiguous, the court may consider extrinsic evidence to interpret the contract. *DMH Joint Venture*, 562 A.2d at 778. The court, instead of the jury, interprets an ambiguous contract if the extrinsic evidence resolves the ambiguity. *Id.*

Here, only § 15.4 of the PSA potentially satisfies the written notice requirement. This section, entitled "Shared Settlement Costs," states that the parties "shall share equally…all *state, county and other transfer taxes,...*" ECF No. 58-2 (emphasis added). Notably, the Maryland Court of Special Appeals has found a similar provision sufficient to satisfy the statutory transfer tax notice requirement. *See DMH Joint Venture v. Hahner*, 562 A.2d 772 (Md. 1989). The contractual provision in *DMH Joint Venture* stated that "transfer taxes shall be split equally between the seller and the purchaser." *Id.* at 774. The *DMH Joint Venture* court found the provision ambiguous because the property at issue was subject to "no fewer than three 'transfer taxes.'" *Id.* at 778. Accordingly, the court considered extrinsic evidence to resolve the ambiguity. *Id.* The court took into account that an initial draft of the parties' contract provided that the sellers would pay "any farmland assessment," but the final agreement split all transfer taxes evenly. *Id.* at 778-79. Based on "the significant financial impact of this change, the sophistication of the parties, the length of their negotiations, and the detail of their Final Agreement," the court concluded the provision constituted sufficient written notice to the buyer of the potential Agricultural Land Transfer Tax pursuant to MD. CODE ANN., TAX-PROP. § 13-308. *DMH Joint Venture*, 562 A.2d at 779.

8

This case presents an even stronger notice scenario than in *DMH Joint Venture.* Section 15.4 of the PSA unambiguously and specifically contemplates the three types of transfer taxes to which the Property was subject -- *state* transfer taxes, *county* transfer taxes, and *other* transfer taxes. *Id.* The tax at issue is unambiguously a *state* transfer tax. *See DMH Joint Venture,* 562 A.2d at 261. Thus, § 15.4 clearly mandates that this transfer tax is shared equally between buyer and seller, and the inclusion of this provision provides adequate written notice to Pulte.

Even if the *state* transfer tax did not clearly provide notice to Pulte, § 15.4 was written broadly, to capture *any* transfer tax. This is so because the provision expressly covers state, county, and "other" transfer taxes. To give the term "other transfer taxes" meaning, therefore, the Court must read it as capturing any transfer tax not otherwise specifically identified, which would include the Agricultural Land Transfer Tax. This is the only reading which gives meaning to "other transfer taxes," and avoids rendering the term superfluous. *See Diamond Point Plaza Ltd.*, 929 A.2d at 952.

Alternatively, were the Court to find §15.4 ambiguous on its face as to providing adequate notice, when construing the evidence most favorably to the nonmoving party, Pulte received adequate written notice from the PSA. It is undisputed that the PSA's purpose was to effectuate a sale of farm land, which would convert the use of the land from agricultural to residential use. In effectuating the sale, the parties contemplated in the PSA how taxes would be allocated; certain identified taxes were to be paid by one party, while transfer taxes would be shared by the buyer and seller under § 15.4 . ECF No. 58-2 at §§ 15.1, 15.4. As in *DMH Joint Venture*, Pulte is a sophisticated repeat player in commercial real estate transactions. *See e.g.* ECF No. 57-5; ECF No. 2 at ¶ 2. More to the point, Pulte has engaged in thousands of real estate transactions in Maryland alone, and many of those transactions triggered the Agricultural

9

Land Transfer Tax. ECF No. 57-5. Pulte knew that Plaintiffs used the Property as a working farm, and Pulte's purchase was designed to convert the use of the Property to residential use, which would trigger this particular type of transfer tax. ECF No. 58-2 at § 7.4; ECF No. 2 at ¶ 5. Because the parties' contract considered all types of taxes to which the Property would be subject, and in light of the sophistication of the parties, the nature of this transaction, and the significant financial impact of the Agricultural Land Transfer Tax, it would be unreasonable to conclude the phrase "other transfer taxes" in § 15.4 did not notify Pulte that it would share equally in the expense of the agricultural *transfer* tax.

Although Pulte's agents contend now they did not know this tax would apply specifically to the Property, they admit they knew generally that the Agricultural Land Transfer Tax applied to transactions within which the Butz purchase squarely fell. *See e.g.* ECF No. 58-5 at ¶ 11. Accordingly, Pulte's experience and knowledge of the Agricultural Land Transfer Tax's applicability renders §15.4 as sufficient to provide notice that "the transfer *may* be subject to the agricultural land transfer tax." *See DMH Joint Venture*, 562 A.2d at 781 (Bell, J., concurring). Thus, both the plain reading of § 15.4 and the surrounding evidence, construed most favorably to Pulte, demonstrates that Pulte was given adequate notice under § 13-308.[3]

Nonetheless, Pulte urges the Court to disregard Pulte's corporate experience in real estate and knowledge of matters such as the Agricultural Land Transfer Tax because this transaction involved agents different than those historically entering into Pulte's land deals. This argument

---

[3] Pulte contends § 15.4 does not provide written notice of the Agricultural Land Transfer Tax because § 26 of the PSA, entitled "Montgomery County Disclosures," does not mention this tax. The disclosures enumerated in § 26, however, all relate to local county law and not real estate taxes. ECF No. 58-2. Accordingly, Pulte's argument is a red herring. This is because § 15.4 indeed *does* expressly enumerate *transfer* taxes and thus memorializes the parties' understanding regarding payment of this specific kind of tax. Section 26 does not address any tax assessments, including those assessments that Pulte paid, despite those assessments not being disclosed in § 26. ECF No. 58-2.

sweeps too broadly. Fundamentally, a corporation is responsible for the acts and omissions of its agents, and the knowledge of its agents is imputed to the corporation if within the scope of the agents' duties. See *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995) (stating Maryland follows traditional rules of agency imputation); 3 Fletcher Cyc. Corp. § 790 ("The general rule is well-established that a corporation is charged with constructive knowledge of all material facts of which its officer or agent receives notice or acquires knowledge within the scope of his or her authority."). Pulte cannot claim corporate ignorance, especially when considering that its agents cannot "shut [their] eyes to the knowledge imputed to the corporation…even if [they] did not have personal knowledge of the fact in dispute." *Gordon Sel-Way, Inc. v. Spence Bros.*, 440 N.W.2d 907, 912 (Mich. App. 1989), *aff'd in part, rev'd in part on other grounds*, 475 N.W.2d 704 (Mich. 1991); see also 19 C.J.S. Corporations § 715 ("Once an agent's knowledge is imputed to the corporation, the imputed knowledge is not affected by changes in the corporation's personnel."). Although Pulte is correct that the information imputed to Pulte cannot be downwardly imputed to the particular agents who handled the transaction at hand, this principle is relevant only if Plaintiffs seek to hold the agents directly and individually liable. See Restatement (Third) of Agency § 5.03 (2006). Butz sues Pulte, the corporation, and so Pulte's contention is misplaced.

More to the point, the specific Pulte agents who executed the PSA were clearly familiar with the various types of taxes that were implicated by the sale and knew the scope of *transfer tax* contemplated in § 15.4 to include the Agricultural Land Transfer Tax. ECF No. 58-2 at §§15.1, 15.4. *See DMH Joint Venture*, 562 A.2d at 779 (considering the "detail of the [parties'] Final Agreement" relevant to determining statutory notice was given). As a result, whether the Court considers Pulte's corporate sophistication and vast experience with real estate transactions

11

involving this particular tax, or the individual agents executing the PSA who knew the Property to be a working farm for which this transfer tax was contemplated, this court invariably concludes that §15.4 substantially complied with the statutory notice requirement.

### B. Contractual Notice

Pulte lastly argues that Plaintiffs are not entitled to the requested relief because Plaintiffs breached § 7.2 of the PSA. Section 7.2 requires Plaintiffs to provide Pulte with "all documents, statements, plans, reports, permits, trust documents…, and other materials in the Seller's possession regarding the Property, including….real estate tax information" within five days following the commencement of the feasibility period. ECF No. 58-2. Critically, however, Pulte fails to show Plaintiffs in fact breached this provision. *Publish Am., LLP v. Stern*, 84 A.3d 237, 249 n. 19 (Md. App. 2014). Although Plaintiffs did not provide Pulte any documents or materials related to the Agricultural Land Transfer Tax during the requisite time period, Pulte advances no evidence that Plaintiffs had in their possession any documents or other materials regarding real estate tax information to give. So while Pulte may be correct that a plaintiff cannot recover on a contract on which the plaintiff has not fully performed, *Publish Am., LLP v. Stern*, 84 A.3d 237, 249 n. 19 (Md. App. 2014), this principle does not apply here. Viewing the evidence most favorably to Pulte, the court cannot conclude that Plaintiffs breached § 7.2. The court's analysis as to satisfaction of statutory notice, therefore, remains unchanged. Plaintiffs are entitled to a declaratory judgment that Pulte is responsible for paying an equal share of the Agricultural Land Transfer Tax.

### C. Attorneys' Fees

Maryland follows the common law "American Rule," under which a prevailing party is not generally awarded attorneys' fees. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952

A.2d 275, 281 (Md. 2008). One exception is where the parties have agreed otherwise in writing. *Id.* Such written agreements to pay legal fees are "generally valid and enforceable" under Maryland law. *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 2d 646, 656 (D. Md. 2013).

Section 22.5 of the PSA states that "if any party obtains a judgment against any other party by reason of breach of this agreement, reasonable attorneys' fees and costs shall be included in such judgment." ECF No. 58-2. Pulte does not meaningfully dispute that this provision entitles the prevailing party in this action to be awarded reasonable attorneys' fees.[4] Because this Court declares judgment against Pulte arising from its breach of the PSA, Plaintiffs are entitled to attorneys' fees. Plaintiffs shall submit memoranda in support of attorneys' fees as required by Local Rule 109.2 of this Court.

### IV. Conclusion

For the aforementioned reasons, Plaintiffs' motion for summary judgment (ECF No. 57) for a declaratory judgment and attorneys' fees is granted, and Pulte's motion for summary judgment (ECF No. 58) is denied. A separate order follows.

5/30/18  
Date

/S/  
Paula Xinis  
United States District Judge

---

[4] Pulte states only that its "Eighth Affirmative Defense raises Plaintiffs' failure to mitigate damages, which is especially relevant to Plaintiffs' stated claim for attorneys' fees." ECF No. 58-1 at 36 n. 15. The Court is at a loss for what Pulte means by this sentence in light of the PSA's unambiguous provision regarding the award of reasonable attorneys' to the prevailing party.

13